UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RONALD H. CATS, <br><br> Plaintiff, <br><br> v. <br><br> NEXTALARM.COM, INC., and H. ALEXANDER ELLIOT, <br><br> Defendants. | CASE NO. C08-1096 RSM <br><br> ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS |

## **I. INTRODUCTION**

This matter comes before the Court on Defendants' Motion to Dismiss. (Dkt. #11). Defendants seek dismissal of all four claims brought by Plaintiff, which include claims for promissory estoppel, breach of contract, unjust enrichment, and securities fraud. Defendants also argue that all claims relying on services or equipment provided by a corporation controlled by Plaintiff should be dismissed because the corporation is not a party to this lawsuit. Plaintiff responds that Defendants misconstrue both the facts and the relevant law that applies to this case.

For the reasons set forth below, the Court GRANTS IN PART Defendants' motion to dismiss.

## **II. DISCUSSION**

**A. Background**

On July 21, 2008, Plaintiff Ronald H. Cats ("Mr. Cats") brought the instant lawsuit to enforce an agreement he entered into with Defendant H. Alexander Elliot ("Mr. Elliot"),

MEMORANDUM ORDER
PAGE - 1

President and Chief Operating Officer of Defendant NextAlarm.com, Inc. ("NextAlarm"). Prior to responding to Plaintiff's complaint, Defendants moved to transfer the case to the Central District of California. The Court denied Defendants' motion. (Dkt. #10). Defendants subsequently brought the instant motion to dismiss pursuant to Rule 12(b)(6), seeking dismissal of Plaintiff's lawsuit in its entirety.

Because the Court has previously discussed the relevant facts that gave rise to this lawsuit in its Order denying Defendants' motion to transfer, the Court finds it unnecessary to restate them in any further detail here.

### B. Standard of Review

In reviewing a Rule 12(b)(6) motion to dismiss, the court must determine whether a plaintiff has established facts which support a claim for relief. *Broam v. Bogan*, 320 F.3d 1023, 1033 (9th Cir. 2003). Courts must consider the complaint in its entirety, including documents incorporated by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007). The facts must be construed in the light most favorable to the plaintiff, and the court should "accept as true all material allegations in the complaint [and] any reasonable inferences to be drawn from them." *Broam*, 320 F.3d at 1028 (citation omitted). A complaint need not include detailed allegations, but must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Importantly, when a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### C. CenCom, Inc.'s Claims

As a preliminary matter, the Court addresses Defendants' arguments regarding CenCom, Inc. ("CenCom"), a corporation owned by Plaintiff. Defendants specifically state that each of Plaintiff's claims rely in part on Plaintiff's allegation that CenCom provided $99,000 worth of services and equipment to NextAlarm. Furthermore, Defendants argue that

because CenCom is not a party to this case, all claims seeking damages based on services and equipment provided by CenCom should be dismissed. The Court finds no merit in Defendants' arguments.

As Plaintiff indicates, none of his claims rely solely on the damages suffered by CenCom. Instead, all of Plaintiff's claims arise from his allegation that he entered into an agreement wherein he was to receive a 40% equity interest in NextAlarm. The services and equipment provided by CenCom are simply part of the overall fabric of Plaintiff's four causes of action. The facts relating to CenCom are not claims in and of themselves.

In any event, Defendants only point to one inapposite case in support of this argument. (Dkt. #11 at 4) (citing *Zimmerman v. Kyte*, 53 Wn. App. 11, 18, 765 P.2d 905 (1988)). In that case, the court recognized that:

> A shareholder who owns all or practically all of a corporation's stock is not entitled to sue as an individual because the shareholder cannot employ the corporate form to his advantage in the business world and then choose to ignore its separate entity when he gets to the courthouse.

*Id*. (internal quotations and citation omitted).

However, the court discussed this principle in the context of determining whether former shareholders owned certain claims against former employees of the corporation following an administrative dissolution of the corporation. *Zimmerman* is not dispositive to the situation presented in this case, where an individual is only averring that the services and equipment provided by a corporation contributes to the causes of action stated in his complaint. Therefore the Court finds no basis to dismiss any of Plaintiff's claims or any portion of Plaintiff's claims based on this ground.

**D. Promissory Estoppel**

Defendants seek dismissal of Plaintiff's promissory estoppel claim under Washington law, which both parties acknowledge applies in this case. To state a claim for promissory estoppel, a plaintiff must establish that there was (1) a promise which (2) the promisor should reasonably expect to cause the promisee to change his position, and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that

MEMORANDUM ORDER
PAGE - 3

(5) injustice can be avoided only by enforcement of the promise. *Corbit v. J.I. Case Co.*, 70 Wash.2d 522, 539, 424 P.2d 290 (1967). Promissory estoppel requires the existence of a promise. *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wash.2d 255, 259, 616 P.2d 644 (1980). A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Havens v. C & D Plastics, Inc.*, 124 Wash.2d 158, 172, 876 P.2d 435 (1994) (citing Restatement (Second) of Contracts § 2(1)). A statement of future intent is not sufficient to constitute a promise. *Elliot Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 13, 98 P.3d 491 (2004). "[I]f the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable." *Klinke*, 94 Wash.2d at 261, n.4 (citations omitted).

Here, Defendants claim that Plaintiff's promissory estoppel claim fails because no promise was made in this case. Defendants contend that a document provided by Mr. Elliot to Plaintiff merely reflects an intention to do something in the future. However, Defendants' arguments overlook the plain language of Plaintiff's complaint, as well as the procedural posture of this case. Plaintiff's complaint clearly states that "[t]he $60,000 in cash, $99,000 credit for services, along with the services and equipment provided, were all provided pursuant to a *promise* from Defendant Elliot to provide Mr. Cats with a 40% share in [NextAlarm]." (Pl.'s Compl., ¶ 25) (emphasis added). The complaint goes on to state that "[r]easonably relying on Defendant Elliot's *promise* on behalf of [NextAlarm] to provide shares amounting to a 40% interest in [NextAlarm], Mr. Cats provided [NextAlarm] with $60,000 in cash and a credit of $99,000 in services, along with other services, equipment and ideas." (*Id.*, ¶ 36) (emphasis added). Based on this language, it is clear to the Court that Plaintiff is alleging that Mr. Elliot made a promise to him, and that he relied on this promise to his detriment.

Moreover, Defendants' reliance on the document is not controlling because Plaintiff's promissory estoppel claim goes far beyond the boundaries of the document. Defendants' arguments are more akin to those that would be made in a summary judgment motion, when

MEMORANDUM ORDER
PAGE - 4

all the relevant and discoverable information would be before the Court. But at this early stage of the proceedings, the document is only one component of Plaintiff's promissory estoppel claim. The Court is only required to determine whether Plaintiff has properly established facts to support his claims on a Rule 12(b)(6) motion to dismiss.

In any event, the Court finds that the document is sufficient to establish a promise. The plain language of the document itself includes the words "Promissory Note." (Pl.'s Compl., Ex. B). The note is preceded by Mr. Elliot's assurance that "[f]ollowing is a note, to *cover you* on the money you've graciously advanced." (*Id.*) (emphasis added). Therefore Defendants' contention that a document that contains such language does not establish a promise defies equity and common sense. It also contradicts the firmly entrenched definition of a promise under Washington law, which as mentioned above states that a promise is a "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that *a commitment has been made*." *Havens*, 124 Wash.2d at 172 (emphasis added). A commitment has very clearly been made in this case under this document by Mr. Elliot.

Alternatively, Defendants argue that even if a promise was made, the doctrine is inapplicable because the promise was supported by bargained-for consideration. This argument is unpersuasive. While the Court acknowledges that promissory estoppel does not apply in Washington where an alleged promise is bargained-for, the consideration provided by Plaintiff in exchange for the promise is limited to $35,000. Furthermore, and as mentioned above, Plaintiff clearly states in his complaint that he provided $60,000 in cash, $99,000 in services, as well as other services, equipments, and ideas to NextAlarm in exchange for a promise that he would receive a substantial equity interest in the company. (Pl.'s Compl., Ex. B). Thus, the remaining moneys, services, equipments, and ideas that Plaintiff provided beyond the $35,000 advance payment were not bargained-for. In fact, the note clearly states that the $35,000 was part of an "overall transaction" in which Plaintiff was purchasing a 40% equity interest in NextAlarm. Indeed, the case heavily relied upon by Defendants with respect to this argument recognizes that "when the promisee's reliance was bargained for, the law of

consideration applies; and it is only where the reliance was unbargained for that there is room for the application of the doctrine of promissory estoppel." *Walker v. KFC Corp.*, 728 F.2d 1215, 1218-19 (9th Cir. 1984) (citation omitted). Plaintiff has sufficiently pled that there exists unbargained-for reliance in this case. As a result, Plaintiff's promissory estoppel claim shall not be dismissed.

### E. Breach of Contract

Next, Defendants seek dismissal of Plaintiff's breach of contract claim on the grounds that no binding contract was entered into between the parties. It is well-established that proper formation of a contract requires the parties' manifestation to each other of their mutual assent to the terms of the contract. *Strange & Co. v. Puget Sound Mach. Depot*, 176 Wash. 90, 98, 28 P.2d 111 (1934). Generally, an offer and an acceptance are sufficient evidence of mutual assent. *Pacific Cascade Corp. v. Nimmer*, 25 Wn. App. 552, 555-56, 608 P.2d 266 (1980). "An offer consists of a promise to render a stated performance in exchange for a return promise being given." *Id*. (citing Restatement of Contracts § 24 (1932)).

Even where definite terms are present, if stipulations and conditions are placed on these terms, the court will not find an enforceable contract. *See Pacific Cascade*, 25 Wn. App. at 556-57 (holding that a letter containing a stipulation that an agreement was subject to further assent and the execution of a final written document was not an enforceable contract). Such conditions indicate a party's intentions to contract in the future, not in the present. *Id*. at 557-59. These conditional agreements are often simply agreements to agree. An agreement to agree is unenforceable as it is merely "an agreement to do something which requires a further meeting of the minds . . . and without which it would not be complete." *Sandeman v. Sayres*, 50 Wash.2d 539, 541-42, 314 P.2d 428 (1957). Additionally, for a contract to form, the parties must assent to sufficiently definite terms and bargained-for consideration. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash.2d 171, 177-78, 94 P.3d 945 (2004). A contract must have "all the terms which the parties intended to introduce into the agreement and until the terms of a proposal are settled, the proposer is at liberty to retire from the bargain." *Pacific Cascade*, 25 Wn. App. at 556-57.

In this case, Defendants again focus on the document mentioned above to claim that Plaintiff cannot create a cognizable breach of contract claim, because the document only indicates an intention to agree in the future. The Court agrees. Unlike a promissory estoppel claim in which equity compels the formation of a contract based on the facts and circumstances of a particular case, a breach of contract claim must be based upon a valid and express contract. Therefore it is appropriate for the Court to confine its analysis of Plaintiff's breach of contract claim to the document containing the promissory note, because this is the document which Plaintiff relies upon to claim the existence of a valid and express contract. However, the document falls significantly short of providing Plaintiff with a contractual right.

The document states that Mr. Elliot has "issued a stock certificate for 1500 shares. This represents 15% of the company as calculated against the shares already issued." (Pl.'s Compl., Ex. B). The promissory note within the document further acknowledges that Mr. Cats' $35,000 payment to Defendants was a "good faith advance[] as part of a transaction in which Ronald H. Cats is purchasing a 40% equity position in [NextAlarm]." (Pl.'s Compl., Ex. B). This language is insufficient to establish a valid and express contract because the terms are clearly indefinite. For instance, the language of the memorandum and Plaintiff's complaint itself states that the 1500 shares represented by the stock certificate represented a 15% equity interest in the company. And as mentioned above, the note indicates that the $35,000 advance was part of an "overall transaction" in which Plaintiff was purchasing a 40% equity position in NextAlarm. Consequently, the document at-issue and Plaintiff's complaint fail to indicate the remaining material terms of the alleged contract between the parties. These terms would have accounted for the 25% difference in equity that Plaintiff was ultimately acquiring. Without such language, the Court is left to speculate what constituted the "overall transaction" and the material terms thereto. Under such circumstances, a valid and express contract did not exist.

In any event, the document evinces a future intention to finalize an agreement. The note in particular states that "it is the intent of both parties to complete the stock purchase transaction as soon as possible." (Pl.'s Compl., Ex. B). The memorandum also supports this

conclusion, as Mr. Elliot clearly informs Mr. Cats that "the agreement, so says my attorney, is complicated and taking time *to finish* . . . I'm assured that the *final draft* will be here soon." (*Id.*) (emphasis added). This language indicates an intention to be bound in the future, not the requisite intention to be bound presently. *See Sandemans*, 50 Wash.2d at 541-42; *see also Keystone*, 152 Wash.2d at 179 ("[A] statement evidences an intent not be bound by expressly referencing the need for further negotiations."). Thus, the required contractual intent to finalize a stock purchase transaction simply does not exist.

Plaintiff maintains that he has a valid breach of contract claim because the circumstances of this case create a contract implied-in-fact. Plaintiff distorts Washington contract law. As Plaintiff acknowledges:

> A contract implied-in-fact (as opposed to unjust enrichment, or an implied-in-law contract), is "an agreement depending for its existence on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other. The services must be rendered under such circumstances as to indicate that the person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them."

(Dkt. #16 at 12) (citing *Young v. Young*, 164 Wash.2d 477, 485, 191 P.3d 1258 (2008)).

This contention only supports Plaintiff's promissory estoppel claim, as Plaintiff is arguing that the Court should examine the facts and circumstances of the case to create an enforceable right. Washington courts are clear in holding that contracts implied-in-fact are those in which a promise is manifested by conduct. *See Ross v. Raymer*, 32 Wash.2d 128, 137, 201 P.2d 129 (1948). Without an express contractual right, which is notably absent here, a breach of contract claim based solely on this document does not exist.

Normally, courts should grant Plaintiff leave to amend unless the court determines that "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber*, 806 F.2d at 1401. Here, Plaintiff cannot plead any additional facts to cure the deficiencies in his breach of contract claim. Any document establishing the remaining material terms to the "overall transaction" in which Plaintiff was to receive a 40% equity interest in NextAlarm would have certainly been attached to Plaintiff's complaint.

MEMORANDUM ORDER
PAGE - 8

And directing Plaintiff to plead additional facts would not support a breach of contract claim, but would only strengthen Plaintiff's equitable claims. As a result, granting leave to amend would be futile, and Plaintiff's breach of contract claim shall be dismissed.

**F. Unjust Enrichment**

Defendants also seek dismissal of Plaintiff's unjust enrichment claim. Unjust enrichment allows a plaintiff to recover the value of the benefit retained by the defendant, "because notions of fairness and justice require it." *Young*, 164 Wash.2d at 484. In such situations, the law allows for courts to find a quasi-contract based upon an implied legal duty to pay for benefits received. *Chandler v. Wash. Toll Bridge Auth.*, 17 Wash.2d 591, 600, 137 P.2d 97 (1943). However, where a party is bound by the provisions of an express contract, he "may not disregard the same and bring an action on an implied contract . . . in contravention of the express contract." *Id.* at 604 (citations omitted).

Where a contract does not exist, as the Court has previously established, a plaintiff may pursue an unjust enrichment action by establishing three elements. The plaintiff must show that there was (1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge by the defendant of the benefit, and (3) inequitable acceptance or retention by the defendant of the benefit. *Young*, 164 Wash.2d at 484-85. A party confers a benefit upon another if he performs beneficial services to or at the request of the other, gives to the other possession of or an interest in money or chattels, saves the other from expense or loss, or adds to the other's advantage in other ways. *Chandler*, 17 Wash.2d at 602-603. The fact that a defendant received a benefit is not enough. *Id.* It is critical that the enrichment be unjust under the circumstances and as between the two parties. *Id.* at 601.

To be unjust as between the two parties, the party conferring the benefit must not be a volunteer. *Lynch v. Deaconess Med. Ctr.*, 113 Wash.2d 162, 165, 776 P.2d 681 (1989). Whether one acts as a volunteer is determined in light of all surrounding circumstances, including (1) whether the benefits were conferred at the request of the party benefitted, (2) whether the party benefitted knew of the payment, but stood back and let the party make the payment, and (3) whether the benefits were necessary to protect the interests of the party who

conferred the benefit or the party who benefitted thereby. *Ellenburg v. Larson Fruit Co.*, 66 Wn. App. 246, 251-52, 835 P.2d 225 (1992). A volunteer may also be "a person who without mistake, coercion, or request has unconditionally conferred a benefit upon another." *Chandler*, 17 Wash.2d at 603.

In the instant case, Plaintiff has satisfied the elements of an unjust enrichment claim. First, Plaintiff conferred a benefit on Defendants, and Defendants do not dispute receiving a benefit in the form of money, services, equipment, ideas, and referrals. Second, Defendants appreciation and knowledge of this benefit can be inferred by Mr. Elliot's memo and note, which clearly recognizes that Plaintiff advanced $35,000 to Defendants. In addition, Defendants acknowledge that Mr. Elliot has previously attempted to repay a portion of the $60,000 amount advanced by Plaintiff. (Dkt. #11 at 10). This conduct further illustrates an appreciation and knowledge of the benefit provided by Plaintiff. Finally, Mr. Elliot's retention of these benefits was unjust. Mr. Cats was not a volunteer. He did not supply money, services, equipment, ideas, and referrals unconditionally, nor did he supply them for his own direct benefit. Instead, he only gave these provisions to Defendants under circumstances in which he expected to be compensated with a substantial equity interest in NextAlarm. Defendants arguments to the contrary are wholly unpersuasive. Accordingly, the Court finds that Plaintiff has sufficiently pled a cause of action for unjust enrichment, and this claim shall not be dismissed.

### G. Securities Fraud

Lastly, Defendants claim that Plaintiff's securities fraud claim should be dismissed because he lacks standing, his complaint fails to plead his fraud claim with any particularity, and he seeks damages that are unavailable under the statute. Significantly, a plaintiff must be an actual purchaser or seller of securities to bring a securities fraud action under § 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("SEA"). *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731-32 (1975) (upholding *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463-64 (2d Cir. 1952)). Courts have nonetheless developed four exceptions to this requirement, which include (1) the "aborted purchaser-seller" doctrine, (2) the "pledge"

doctrine, (3) the "forced seller" doctrine, and (4) the right of shareholders to sue derivatively on behalf of a corporate buyer or seller of securities.

Under the "aborted purchaser-seller" doctrine, a plaintiff has standing to bring an action under § 10(b) and Rule 10b-5 of the SEA as long as he has a *binding* contract to purchase or sell securities, even though the transaction was never consummated. *Securities Investor Protection Corp. v. Vigman*, 803 F.2d 1513, 1518 (9th Cir. 1986) (emphasis added). Meanwhile, under the "pledge" doctrine, one who pledges stock as collateral for a loan has standing to bring a securities fraud claim, even though no foreclosure has taken place. *See U.S. v. Kendrick*, 692 F.2d 1262, 1265 (9th Cir. 1982). The "forced seller" doctrine arises in connection with mergers in which a plaintiff alleges fraud in the procurement of the merger. *See Vine v. Beneficial Finance Co.*, 374 F.2d 627, 635 (2d Cir. 1967). Finally, a shareholder may sue derivatively on behalf of a defrauded corporation rather than in his own name, provided that he satisfies the various procedural requisites for bringing a derivative suit. *See Herpich v. Wallace*, 430 F.2d 792, 803 (5th Cir. 1970).

In this case, and although the parties do not expressly identify which exception is at-issue, the Court finds it clear that only the "aborted purchaser-seller" doctrine may potentially apply to Plaintiff's claim, and all other exceptions are inapplicable. Moreover, Plaintiff contends that the essence of his claim is based upon Defendants misrepresentation to Plaintiff that they would provide him stock in exchange for the money, services, equipment, ideas and referrals he provided to Defendants. In other words, Plaintiff claims that he possesses the requisite standing because Defendants promised to transfer securities to Plaintiff.

However, Plaintiff's claims rely on his allegation that a valid and express contract was in place for the purchase of NextAlarm stock. As discussed above, the Court has determined that no binding contract existed between the parties. A plaintiff must have a binding contractual right to purchase securities to confer standing. *See Cohen v. Stratosphere Corp.*, 115 F.3d 695, 700-01 (9th Cir. 1997). Mr. Cats and Mr. Elliot merely had an agreement to agree, and the terms of the stock purchase agreement were not definite. In fact, the document

at-issue clearly indicates that a final agreement was being drafted. Without the existence of such a contract, a party simply does not have standing to bring a securities fraud claim.

Because Plaintiff lacks standing, the Court finds it unnecessary to discuss the parties' remaining arguments with respect to specificity and damages. Furthermore, granting leave to amend would be futile, because Plaintiff cannot show the existence of a valid and express contract. Accordingly, Plaintiff's securities fraud claim shall be dismissed.

### III. CONCLUSION

Having reviewed the relevant pleadings, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motion to Dismiss (Dkt. #11) is GRANTED IN PART. Plaintiff's claims for breach of contract and securities fraud are dismissed. Plaintiff's claims for promissory estoppel and unjust enrichment shall remain. Defendants are directed to file an answer to Plaintiff's complaint in accordance with the Federal Rules of Civil Procedure. Once Defendants file their answer, the Court will issue its initial scheduling order.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 5th day of March, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE